**Case No. 22-1303**

---

In the United States Court of Appeals
for the Tenth Circuit

---

**United States of America**,
Plaintiff-Appellee,

v.

**Robert Lewis Dear, Jr.**,
Defendant-Appellant.

---

On Appeal from the United States District Court
for the District of Colorado
The Honorable Robert E. Blackburn, District Judge
D.C. Case No. 1:19-cr-00506-REB-1

---

**Appellant's Reply Brief**

---

Office of the Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Tel: (303) 294-7002
Fax: (303) 294-1192
Email: Jacob_Rasch-Chabot@fd.org

Virginia L. Grady
Federal Public Defender

Jacob Rasch-Chabot
Assistant Federal Public Defender

Attorneys for Appellant
Robert Lewis Dear, Jr.

October 18, 2023

## Table of Contents

Table of Authorities ................................................................................... iii

Argument ................................................................................................... 1

    I.   The district court failed to contend with substantial evidence undermining the case for forcible medication. ............................................... 3

        A.   The district court's predicate findings were not adequate. ...................... 4

        B.   The district court did not make a "credibility determination" with respect to the expert testimony. ......................................................... 5

        C.   Mr. Dear presented substantial evidence, and the district court was required to discuss it. ..................................................................... 8

        D.   The district court's "opaque" discussion of the literature is not enough. ....................................................................................... 10

        E.   *Ruiz-Gaxiola* and *Watson* support remand. ................................. 12

    II.  This Court may exercise its discretion to either remand for further findings or decide for itself whether the government met or failed to meet its burden as a matter of law. ................................................... 15

        A.   Standard of Review. ......................................................................... 16

        B.   The government clearly failed to meet its burden by clear and convincing evidence. ................................................................... 17

            1.   The district court did not make a credibility determination. ............ 18

            2.   It is undisputed that the longstanding consensus of the psychiatric community was that delusional disorder is resistant to medication. ............................................................................... 19

            3.   Restoration is not substantially likely in light of Mr. Dear's age, duration of untreated psychosis, and other specific characteristics. 20

Conclusion ................................................................................................ 25

Certificate of Compliance ........................................................................ 26

## <u>Table of Authorities</u>

**Cases**

*Anderson v. City of Bessemer City*, 470 U.S. 564 (10th Cir. 1985) ...................................7, 18

*Ashby v. McKenna*, 331 F.3d 1148 (10th Cir. 2003)........................................................ 3, 14

*Cooper v. Harris*, 581 U.S. 285 (2017) ................................................................... 16

*Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303 (10th Cir. 2007)..............................6, 7, 17

*United States v. Bush*, 585 F.3d 806 (4th Cir. 2009) ........................................... 15

*United States v. Chavez*, 734 F.3d 1247 (10th Cir. 2013) .................................... 16

*United States v. Coy*, 991 F.3d 924, 929 (8th Cir. 2021)....................................... 16

*United States v. Delgado-Lopez*, 974 F.3d 1188 (10th Cir. 2020)....................................... 6, 7

*United States v. Englehart*, 22 F.4th 1197 (10th Cir. 2022) .......................... 1, 2, 11, 13, 15

*United States v. Ghane*, 392 F.3d 317 (8th Cir. 2004)........................................... 19

*United States v. Ruiz-Gaxiola*, 623 F.3d 684 (9th Cir. 2010) ........................ 3, 6, 10, 12, 15

*United States v. Seaton*, 773 F. App'x 1013 (10th Cir. 2019) ......................................17, 21

*United States v. Valenzuela-Puentes*, 479 F.3d 1220 (10th Cir. 2007)................................ 16

*United States v. Watson*, 793 F.3d 416 (4th Cir. 2015) ........................1, 2, 3, 14, 15, 20, 22

## Argument

Mr. Dear's principal issue on appeal, and the only one this Court must address, is whether the district court's *Sell* order—specifically its finding of a substantial likelihood of restoration—was inadequate because it failed to "contend with substantial evidence that would undermine the case for forcible medication," *United States v. Watson*, 793 F.3d 416, 424 (4th Cir. 2015). Assuming this Court agrees, the typical practice is to vacate the order and remand to the district court for further findings. *See United States v. Englehart*, 22 F.4th 1197, 1211 (10th Cir. 2022). At a minimum, that is the relief Mr. Dear is entitled to.

However, Mr. Dear has also suggested that this is the rare case where this Court could take it a step further and reverse because, notwithstanding the district court's insufficient analysis, this Court could determine from its own review of the record that the district court's ultimate finding was clearly erroneous. *See Watson*, 793 F.3d at 429. Whether to reach this issue or remand without doing so is within the Court's discretion. *See Englehart*, 22 F.4th at 1211 n.10.

The government's answer brief flips Mr. Dear's argument on its head, insisting that the *only* issue is whether the district court clearly erred in finding that restoration was substantially likely. Indeed, the government's five-paragraph "statement of the issue" fails to even mention the main issue on appeal—the inadequacy of the district court's analysis. The government then dedicates the vast majority of its brief arguing that the district court did not clearly err.

1

At the end, when the government finally addresses the inadequacy of the district court's analysis (while claiming it is Mr. Dear's "alternative" argument), the government suggests "the district court's failure to make sufficient findings may still be harmless if the Court can affirm on the record." Gov't Br. at 56. Thus, although it does not expressly say so, the government's brief gives the impression that if this Court first determines the district court's finding was not clearly erroneous, it can overlook the inadequacy of the district court's analysis. To be clear, that is not the law (nor does the government expressly claim otherwise). If a district court's findings are inadequate, remand is required regardless of whether the record might support the district court's ultimate finding. *Englehart*, 22 F.4th at 1211 (remanding for additional findings because whether there was "ample basis" in the record "is not the same as" making the requisite findings).

Accordingly, this Court must adhere to the order of operations set out in Mr. Dear's opening brief, not the reverse order the government confusingly presented. **First**, this Court must consider whether the district court failed to "contend with substantial evidence that would undermine the case for forcible medication," *Watson*, 793 F.3d at 424. If so, remand for additional findings is warranted. **Second**, however, this Court may exercise its discretion to review the record without the benefit of adequate district court findings to determine whether the government failed to meet

its burden as a matter of law. If so, then reversal is required without the need for further proceedings.[1]

Here, it is apparent the district court failed to contend with the evidence undermining the case for forcible medication. Thus, at a minimum, Mr. Dear is entitled to remand for additional findings.

## I.     The district court failed to contend with substantial evidence undermining the case for forcible medication.

In his opening brief, Mr. Dear urged this Court to adopt the Fourth and Ninth Circuit's requirement that a district court must make specific factual findings in support of the *Sell* factors and contend with substantial contrary evidence. Opening Br. at 31-32 (citing *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 688 (9th Cir. 2010); *Watson*, 793 F.3d at 423). And he maintained that, on de novo review, this Court can easily conclude that the district court failed to do so here.

The government does not appear to dispute that this Court's review is de novo, nor does it encourage this Court to reject the requirement that a district court contend with substantial evidence that would undermine the case for forcible medication.

---

[1] On the other hand, if this Court were to conclude that the government met its burden as a matter of law—i.e., a contrary finding would be clear error—then perhaps remand for additional findings would be unnecessary. *Cf. Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) ("[W]ith respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that 'it would have been an abuse of discretion for the trial court to rule otherwise.'" (citation omitted)). The government has not argued it met its burden as a matter of law, only that the district court did not clearly err in finding it had.

Instead, it argues that the district court's findings were sufficient to enable meaningful appellate review and that any contrary evidence, including Mr. Dear's three experts, was apparently so insubstantial that it did not merit any discussion whatsoever.

The government's position is untenable. As explained in Mr. Dear's opening brief, his experts' opinions certainly constituted "substantial evidence," and the district court's utter failure to engage with the bases of their opinions was error. The government's arguments to the contrary are unpersuasive.

### A.    The district court's predicate findings were not adequate.

First, the government points out (at 57-59) that the district court made multiple subsidiary findings in support of its ultimate determination that restoration was substantially likely, and it lists nineteen such findings in bullet point format. But Mr. Dear's claim is not that the district court's number of findings was insufficient. It's that none of the district court's numerous findings meaningfully addressed Mr. Dear's evidence and arguments. Instead, the findings the government touts either state undisputed facts (e.g., Mr. Dear's age and diagnosis of delusional disorder) or set forth the government's expert testimony. The failure to engage with any contrary evidence is the error.

Tellingly, of the nineteen findings the government highlights as representing an adequate analysis, only two so much as reference Mr. Dear's supporting evidence: (1) "Others reflect lower rates," referring to studies involving restoration rates lower than reported by the government's experts; and (2) "Dr. Woods and Dr. Martinez

disagreed." Gov't Br. at 58. Given that Mr. Dear presented three experts (not two)
who collectively provided approximately 10 hours of testimony, the mere
acknowledgement of their disagreement hardly constitutes contending with substantial
contrary evidence. And contrary to the government's suggestion, the sheer volume of
other findings cannot make up for the district court's failure to meaningfully address
the evidence.

Finally, the government points out that "Mr. Dear contested five other issues
below, and the court made many more findings to support its resolution of those
claims." Gov't Br. at 59. Of course, whether the district court's resolution of *other*
issues was supported by adequate findings is totally irrelevant to this appeal. What is
relevant is that the district court, in finding that restoration was substantially likely,
utterly failed to address Mr. Dear's substantial evidence tending to undermine that
finding.

**B.    The district court did not make a "credibility determination" with respect to the expert testimony.**

Instead of grappling with the hours of expert testimony—or even stating what
the defense experts' opinions and underlying bases were—the district court resolved
the battle of experts in a single sentence, concluding the government's experts were
"entitled to greater weight" because of their "long experience . . . in competency
restoration" and "personal observations of and interactions with Mr. Dear." R. vol. I
at 44. As explained in the opening brief, this hardly constitutes "'thorough

consideration and justification' and 'especially careful scrutiny.'" *Ruiz-Gaxiola*, 623
F.3d at 692. This is particularly so given that Mr. Dear's experts likewise had decades
of experience in competency restoration and treating patients with Delusional
Disorder, and one of them also personally interviewed Mr. Dear.

The government argues this is sufficient because it's a credibility determination,
and a district court is not required to explain a credibility determination. Gov't Br. at
59 (citing *United States v. Delgado-Lopez*, 974 F.3d 1188, 1193 (10th Cir. 2020)).
However, the government is wrong to characterize the weight the district court gave
the experts' opinions as a "credibility" determination. "The question of the credibility
of an expert—as opposed to the question of the reliability of the expert's
conclusions—concerns whether the expert is believable. Credibility embraces such
matters as professional qualifications, mental capacity, bias and interest, and bad
moral character." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1312 (10th Cir. 2007).
Whether experts are "correct, or whether their conclusions [a]re based on sufficient
evidence and sound medical practice, bears on their credibility in no genuine sense."
*Id.*

Here, the district court did not make credibility determinations that the
government's experts were truthful while the defense experts were uncertified,
mentally impaired, biased, and/or immoral. Rather, the district court determined that
the government experts were entitled to greater weight based solely on their BOP

experience, without scrutinizing the bases of any of the experts' opinions. In doing so, the district court utterly failed to contend with substantial contrary evidence.

Moreover, if the district court's finding could be characterized as a "credibility determination," the government's proposed rule that a district court need not explain such credibility determinations is a poor fit in the *Sell* context. The only authority the government provides is *Delgado-Lopez*, where this Court acknowledged the district court did not have to explain why it found the defendant's testimony not credible at a sentencing hearing (though it did explain, and its explanation revealed its credibility determination was fraught with error). 974 F.3d at 1193. In the *Sell* context, such a rule cannot trump the overarching one that a district court make specific findings and contend with substantial contrary evidence. Were it otherwise, a district court could circumvent this requirement "by denominating [its findings] credibility determinations" and thereby "insulate his findings from review." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (10th Cir. 1985).

Furthermore, the analysis of expert testimony is not typically based on factors "only the trial judge can be aware of" such as "the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Id.* Rather the determination of the correctness of expert testimony is, or at least in this case should have been, based on "whether their conclusions were based on sufficient evidence and sound [psychiatric] practice." *Jewell*, 508 F.3d at 1312. Because

7

the district court failed to appropriately scrutinize the expert testimony in this case, remand for further findings is necessary.

### C. Mr. Dear presented substantial evidence, and the district court was required to discuss it.

Next, the government mischaracterizes Mr. Dear's argument as claiming the district "court was required to make a subsidiary finding rejecting and rebutting each and every point he made." Gov't Br. at 60. Of course not. More accurately, Mr. Dear's argument is that the district court was at least required to clearly address *something*, *anything* his experts testified to as forming the bases of their opinion. Instead, the district court's analysis consisted of one vague reference to "some studies" that show lower restoration rates for patients with delusional disorder, an observation that two defense experts disagreed with the government's experts, and an assurance that the court "considered carefully the testimony of Dr. Wood and Dr. Martinez on this point," (again, no mention of the third defense expert, Dr. Morton, who also testified on this point). Giving such short shrift to the defense experts' testimony cannot satisfy the district court's burden to contend with substantial evidence undermining the case for involuntary medication.

Tacitly acknowledging the district court's failure to contend with the expert testimony, the government argues that Mr. Dear failed to present *any* "substantial evidence" deserving of discussion. That is, the government admits that more discussion "might have been warranted if Dear had presented substantial evidence

that contradicted the government's experts on these issues," but the government insists he didn't. Gov't Br. at 59. The government's position is untenable.

As explained in the opening brief, Mr. Dear presented testimony from three eminently qualified experts over the course of two days of hearings totaling approximately ten hours of testimony. Although the government attempts to disparage them, it nevertheless admits they were "no doubt . . . well credentialed." Gov't Br. 37. Mr. Dear's experts testified that the longstanding consensus of the psychiatric community is that Delusional Disorder is highly resistant to antipsychotic medicines. Notably, while the government's experts challenged the continuing viability of this view, they did not dispute that this had long been the prevailing belief. *See* R. vol. 3 at 71, 119-20, 173. Mr. Dear's experts also opined that his extraordinarily long duration of untreated psychosis (DUP) was a significant factor further undermining the likelihood that he could be restored, as was his advanced age. *See, e.g., id.* at 354-55, 363. Although they ultimately gave these factors little weight, even the government's experts begrudgingly agreed that these were relevant factors as supported by published studies. *See id.* at 55, 117, 189.

To call this evidence so insubstantial that it merits no discussion whatsoever would set a ridiculously high bar for the meaning of "substantial."

### D.   The district court's "opaque" discussion of the literature is not enough.

The government admits (at 62) that the district court's discussion of the literature was "somewhat opaque," but it maintains in context it was sufficient. It wasn't.

Recall, the district court stated that "some published studies" reflect restoration rates consistent with the experience of the government's experts. R. vol. 1 at 43. It then said that "some published studies" reflected lower rates. *Id.* Finally, it concluded that "some published studies [were] less persuasive because some studies involved fairly small sample sizes, medication trials of less than three months, and/or indications that patients in the study failed to fully comply with the medication regime being studied." *Id.* That's four times the district court referred to "some studies" or "some published studies" without specifying which studies it was referring to and which studies, if any, it found persuasive or unpersuasive. Such lack of clarity and engagement in a written *Sell* order clearly falls short of the requisite "'thorough consideration and justification' and 'especially careful scrutiny.'" *Ruiz-Gaxiola*, 623 F.3d at 692.

According to the government, the district court must have been saying that the older studies predating the Herbel and Cochrane studies were unpersuasive because it "perfectly tracks" Dr. Preston Baecht's criticism of them. And therefore the district

court must have found the Herbel and Cochrane studies persuasive. This is questionable for a couple reasons.

First, the government exaggerates when it says the court's analysis "perfectly tracks" Dr. Preston Baecht's testimony. That is, the government identifies three separate statements of Dr. Preston Baecht spanning nearly 60 pages of the transcript where she made some similar criticisms of the pre-Herbel and Cochrane literature. Perhaps if the government had identified a single line from Dr. Preston Baecht's report or testimony that the court was clearly referencing, then it could be said to "perfectly track" such that the government's would be the best interpretation, but that's not the case.

Notably, Dr. Preston Baecht also testified that the Herbel and Cochrane studies likewise suffered from small sample sizes. Thus, one of the justifications the district court gave for finding "some studies" less persuasive also applied to the Herbel and Cochrane studies. It would be odd to discredit "some studies" for small sample size but not the equally flawed Herbel and Cochrane studies.

Recognizing this, the government admits another plausible interpretation is that the district court found all of the studies problematic and relied on none of them. That's fine too, says the government, because the district court was permitted to rely solely on the anecdotal experience of Dr. Preston Baecht and Dr. Sarrazin in finding that restoration was substantially likely. Thus, according to the government, "it is irrelevant which interpretation is correct." Gov't Br. at 64.

11

First of all, the government overlooks other potential interpretations—for example, that the district court erroneously credited the Herbel and Cochrane studies based on its misunderstanding that they did not suffer from small sample sizes. In any event, what the government fails to appreciate is that this ambiguity, i.e., that we do not know what the district court's reasoning is, that's the error. Whether there was sufficient evidence to support the district court's ultimate finding is a different matter. *Englehart*, 22 F.4th at 1211 (remanding for additional findings because whether there was "ample basis" in the record "is not the same as" making the requisite findings). The district court was obligated to make particularized findings and meaningfully address contrary evidence. Instead, the district court's one attempt at doing so, its ill-fated discussion of the literature, is indecipherable. As such, it is apparent that the district court failed its obligation.

**E.    *Ruiz-Gaxiola* and *Watson* support remand.**

As noted above, the government does not ask this Court to reject the requirement from the Fourth and Ninth Circuits that a *Sell* order must contain particularized findings supporting each factor, including contending with substantial evidence tending to undermine the case for involuntary medication. Instead, the government (at 64-65) attempts to distinguish *Ruiz-Gaxiola* and *Watson* on their facts.

As an initial matter, Mr. Dear cited *Ruiz-Gaxiola* and *Watson* for their general principles and the standards they established, not their application of their own facts

12

to that standard. In any event, the absence of analysis in this case is on par with the severity of the inadequacies in *Ruiz-Gaxiola* and *Watson*.

First, the government distinguishes *Ruiz-Gaxiola* on the ground that the "magistrate judge failed to make *any* factual findings relevant to the second prong of the *Sell* test." 623 F.3d at 696. Instead, the "magistrate judge simply set forth the testimony offered by each side" and concluded without analysis that the second prong had been met. *Id.* The *Sell* order here was equally inadequate. Unlike in *Ruiz-Gaxiola*, it utterly failed to set forth any of the testimony supporting the defense. Instead, the district court set forth only the governments' expert testimony, and then it adopted it wholesale with only a single sentence explaining that it was doing so because of their experience. It is splitting hairs to suggest that this *Sell* order was any more complete than the one in *Ruiz-Gaxiola*.[2]

The government also claims that *Watson* is inapposite. That is, in *Watson*, the findings were inadequate because they were not tailored to someone with the defendant's specific condition and characteristics. True enough, but that the inadequacy was of a different kind in *Watson* does not suggest that the court's error here—failing to discuss to the defendant's evidence at all—is any less egregious.

---

[2] The government also attempts to distinguish *Ruiz-Gaxiola* because that order contained a "glaring logical flaw" that simply because the drugs at issue were *designed* to restore normal thought processes they were *substantially likely* to do so. However, that flawed reasoning goes more to whether the district court clearly erred in finding the second prong of *Sell* was satisfied (as the Ninth Circuit found) than to the discrete issue of the adequacy of the findings.

13

More importantly, and incorrectly, the government relies on *Watson* for the proposition that the district court's error "would have been harmless if the record supported its ultimate decision." Gov't Br. at 64. As noted above in the introduction, the implication is that if this Court first determines the district court did not clearly err in finding that restoration was substantially likely, then it can hold that any failure to make specific findings and meaningfully engage with contradictory evidence is harmless. Again, that is not the law. *See Englehart*, 22 F.4th at 1211. And nothing in *Watson* says otherwise.

What *Watson* said was that it was not a case where the error was "harmless because we can see for ourselves that the government has met its burden." 793 F.3d at 425. To be clear, an appellate court "can see for it [itself] that the government has met its burden" only if it can make such a determination as a matter of law—i.e., that a district court would clearly err in finding otherwise. *Cf. Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) ("[W]ith respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that 'it would have been an abuse of discretion for the trial court to rule otherwise.'" (citation omitted)). *Watson* later makes this point clear when it declines to remand for further findings because "the record permits only one resolution of the factual issue." 793 F.3d at 429.

Accordingly, contrary to the government's implication, a determination by this Court that the district court's ultimate finding was not clearly erroneous (should this

Court choose to reach the issue), does not render harmless the district court's failure to make adequate findings and contend with contrary evidence. In any event, as discussed below, the district court's ultimate finding was clearly erroneous.

II.    **This Court may exercise its discretion to either remand for further findings or decide for itself whether the government met or failed to meet its burden as a matter of law.**

If this Court concludes that the district court's order was insufficient because it failed to contend with Mr. Dear's evidence, it can either remand for further findings or decide for itself whether the government met or failed to meet its burden as a matter of law. *Compare Watson*, 793 F.3 at 429 (declining to remand because "the record permits only one resolution of the factual issue"), *and Ruiz-Gaxiola*, 623 F.3d at 696 ("Although in some instances we might remand to allow the court to remedy its failure, doing so here would be futile[ because t]here is no explanation that the court could provide on remand and no findings consistent with the record before us that would allow us to conclude that the government has met its burden under the second *Sell* factor by clear and convincing evidence."), *with United States v. Bush*, 585 F.3d 806, 818 (4th Cir. 2009) ("Because the district court's order did not address these factors relating to the application of the fourth prong of the *Sell* test, we also remand this issue for consideration of further evidence, if it is deemed appropriate, and findings by the court."), *and Englehart*, 22 F.4th at 1211 ("We express no opinion whether the Sexual Material Prohibition could have been justified by the evidence available in the

15

record. To enable meaningful appellate review, the district court must do so. We remand for the district court to try again.").

Should the Court reach this issue, it should conclude that the district court clearly erred in finding a substantial likelihood of restoration.

## A.     Standard of Review

The parties agree that this Court's review is for clear error and that the government's burden in district court was proof by clear and convincing evidence. As the government explains, and Mr. Dear agrees, clear error review incorporates this higher burden of proof. That is, "the heavier a plaintiffs' evidentiary burden, the harder it is to find that plaintiffs have carried their burden—and the more likely that it would be clearly erroneous to find that they have." Gov't Br. at 29 (quoting *Cooper v. Harris*, 581 U.S. 285, 337 n.7 (2017) (Alito, J., concurring in part)). Thus, the basic question for this Court is whether the district court clearly erred in finding that the government carried its burden by clear and convincing evidence. About this much, there is no dispute.

Beyond that, however, Mr. Dear and the government have each offered their own version of the combined standard incorporating different articulations of the clear-error and clear-and-convincing standards. Mr. Dear phrased this Court's review as whether it is firmly convinced the government's evidence did not instantly tilt the evidentiary scales in its favor when weighed against the evidence offered in

16

opposition. Opening Br. at 39 (citing *United States v. Chavez*, 734 F.3d 1247, 1250 (10th Cir. 2013); *United States v. Valenzuela-Puentes*, 479 F.3d 1220, 1228 (10th Cir. 2007)).

The government takes issue with the "instantly tilts" language, calling it misleading and claiming the Supreme Court only ever used that language one time. Gov't Br. at 28 n.8. However, the government doesn't cite any authority suggesting this articulation is incorrect, and this Court has continued to invoke it, including in the *Sell* context. *See Valenzuela-Puentes*, 479 F.3d at 1228; *United States v. Seaton*, 773 F. App'x 1013, 1022 (Bacharach, J., dissenting). Thus, Mr. Dear's articulation of the relevant standard is correct, even if it's not the one the government prefers.[3]

## B. The government clearly failed to meet its burden by clear and convincing evidence.

In his opening brief, Mr. Dear demonstrated that the government clearly failed to meet its burden to show a substantial likelihood of restoration particularly in light of the evidence that (1) delusional disorder is highly resistant to antipsychotic medication and (2) Mr. Dear's age and exceptionally high DUP undermine the likelihood of restoration. The government's attempts to minimize this evidence are unpersuasive.

---

[3] The government also discusses the sufficiency-of-the-evidence standard "to the extent" Mr. Dear raised such a challenge. He didn't.

### 1.    The district court did not make a credibility determination.

First, the government claims that in giving the government's experts testimony greater weight it was making a credibility determination, which is "virtually unreviewable" on appeal. Gov't Br. at 33. However, as discussed above, the district court was not making a credibility determination. Again, the "question of the credibility of an expert—as opposed to the question of the reliability of the expert's conclusions—concerns whether the expert is believable. Credibility embraces such matters as professional qualifications, mental capacity, bias and interest, and bad moral character." *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1312 (10th Cir. 2007). Whether experts are "correct, or whether their conclusions [a]re based on sufficient evidence and sound medical practice, bears on their credibility in no genuine sense." *Id.*

Here, the district court did not find that the government's experts were telling the truth, while the defense experts were unqualified or immoral. Nor was it making a determination based on factors "only the trial judge can be aware of" such as "the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson*, 470 U.S. at 575. Only these types of credibility determinations are afforded extreme deference on appeal. Where, as here, a district court is weighing evidence based on "factors other than demeanor and inflection," such as "[d]ocuments or objective evidence," a "court of appeals may

well find clear error even in a finding purportedly based on a credibility determination." *Id.*

Accordingly, contrary to the government's assertion, this Court can and should review whether the district court clearly erred in elevating the testimony of the government's witnesses to "clear and convincing" status notwithstanding substantial contrary evidence.

> **2.    It is undisputed that the longstanding consensus of the psychiatric community was that delusional disorder is resistant to medication.**

In his opening brief, Mr. Dear stated that "the consensus of the psychiatric community, based on decades of studies, has long been that antipsychotic medication is ineffective at treating delusional disorder." *Id.* The government (at 41) faults Mr. Dear for not citing any supporting studies and claims his expert testimony was based on conclusory assertions. But the government overlooks the fact that this was never in dispute. Indeed, this was the backdrop against which all other evidence was presented. The government's own witnesses testified that this was the traditionally held view. The Herbel and Cochrane studies discussed it. And the defense experts testified that they adhered to this conventional wisdom as they had not been swayed by the limited evidence in the Herbel and Cochrane studies that sought to challenge this consensus for the first time.

For example, Dr. Sarrazin explained that the "general opinion" in the 1990s was that patients with delusional disorder "were less responsive to antipsychotic

medications." R. vol. 3 at 173. And Dr. Preston Baecht acknowledged that the Herbel Study conflicted with "earlier literature that had showed poor prognosis or outcomes for the use of antipsychotics with delusional disorder," including two studies specifically referenced in the Herbel Study. *Id.* at 71, 119-20. Indeed, as Mr. Dear pointed out in the opening brief, case law from the early 2000s also confirms this. *See United States v. Ghane*, 392 F.3d 317 (8th Cir. 2004) (holding that restoration was not substantially likely because delusional disorder had only a 5-10% response rate to treatment with antipsychotic drugs).

Thus, it was not incumbent on Mr. Dear to cite additional studies to further prove that which was undisputed. It was the government's burden to prove clearly and convincingly that the Herbel and Cochrane studies and the recent experience of its experts was enough to successfully challenge this long-held scientific consensus. It clearly failed to do so.

> **3.    Restoration is not substantially likely in light of Mr. Dear's age and duration of untreated psychosis.**

Apart from whether antipsychotic medication is generally ineffective against delusional disorder, Mr. Dear argued in his opening brief that the government clearly failed to prove by clear and convincing evidence that restoration was substantially likely given his specific characteristics, namely his age and DUP. Indeed, as the Fourth Circuit held in *Watson*, the district court is required to consider these factors. 793 F.3d at 424 ("'[T]he government must 'relate the proposed treatment plan to the individual

defendant's particular medical condition,' which requires consideration of factors specific to the defendant in question, including not only his medical condition, but also his age and the nature and duration of his delusions."); *accord Seaton*, 773 F. App'x 1013, 1022 (10th Cir. 2019) (Bacharach, J., dissenting) ("[T]he government's evidence must go beyond generalities, focusing on the particular defendant's mental condition, including the intensity and duration of his or her delusions.").

The government disputes that it must show that someone with these specific characteristics is substantially likely to be restored while also claiming it has made such a showing.

### a. Duration of Untreated Psychosis (DUP)

First, as to DUP, the government points out that the district court did not expressly find that Mr. Dear had a DUP of 30 years, but that it was "at least 10" and "as many as 30 years." Gov't Br. (citing R. vol. 1 at 41). That's true, but it doesn't get the government anywhere. As an initial matter, it once again highlights the inadequacy of the district court's findings. In any event, the government still failed to present clear and convincing evidence that someone with a DUP range of 10-30 years was substantially likely to be restored.

Recognizing this, the government instead argues that it didn't have to. In support, it relies on *United States v. Coy*, 991 F.3d 924, 929 (8th Cir. 2021), for the proposition that "such minutely calibrated evidence is [not] necessary for the government to carry its burden." But *Coy* wasn't referring to the defendant's DUP. It

21

was responding to the defendant's argument that the government's evidence only addressed delusional disorder in general, not the defendant's allegedly "rare subgroup" of delusional disorder. *Id.*

DUP, on the other hand, is generally accepted as a useful predictor of the likelihood of restoration, as Mr. Dear's experts testified, and as was reflected in the Herbel study. Indeed, it is so widely accepted that it has been worked into the caselaw as a factor a district court *must* consider. *Watson*, 793 F.3d at 424.

Nevertheless, the government maintains (at 47-48), as its experts did, that DUP is not a significant factor in Mr. Dear's case because (1) Mr. Dear's "precise" DUP is unknown, (2) there is not enough data to indicate whether DUP is a useful predictor for treatment response in delusional disorder, and (3) Dr. Preston Baecht had success with at least two patients with a DUP of greater than 10 years. This is unpersuasive for a couple reasons.

First, the government is wrong to suggest this uncertainty somehow supports its case for proving a substantial likelihood of restoration by clear and convincing evidence. It doesn't. Given that DUP is a generally accepted indicator of restoration, the uncertainty around Mr. Dear's precise DUP, whether 10 years (long) or 30 years (extremely long), undermines the government's case that restoration is likely. Likewise, that there is not enough data to prove that DUP is *not* a useful indicator suggests the government has failed to show that someone with such a long DUP is substantially likely to be restored—not that it's an irrelevant factor.

22

Moreover, the government wants to, but cannot, have it both ways when it comes to small sample sizes. On the one hand, when only one out of the four patients with a DUP greater than 13 years in the Herbel study was successfully restored, the government cries "small sample size" and insists it can be disregarded. On the other hand, when Dr. Preston Baecht has successfully treated two patients with a DUP of greater than ten years, that's somehow clear and convincing. Once again, such conflicting evidence does not help the government meet its burden, it undermines it.

### b. Age

In his opening brief, Mr. maintained that age is a significant predictor of restoration, and Mr. Dear's advanced age was likely to be a hinderance to his restoration, as supported by his expert's opinions, based on their review of the relevant literature. The government (at 51) criticizes their testimony as unsupported because they did not discuss specific studies or their specific experiences with older patients.

However, the government ignores that its own expert, Dr. Preston Baecht, testified that "older people tend to do less well," which was supported by "several studies that indicated that age, the older age is correlated with less favorable outcomes." R. vol. 3 at 55 (emphasis added). On the other hand, she also testified that in the Cochrane study, older patients actually responded more quickly to treatment.

It is unclear why Mr. Dear should be faulted for failing to identify additional studies confirming what the government's experts already demonstrated in their case

in chief, i.e., that *multiple* studies indicate that age is correlated with a reduced likelihood of restoration, while only one suggested otherwise. This evidence, despite it coming from the government's experts, substantiates Mr. Dear's position that age is a significant predictor of restoration.

Nor does the government's criticism that defense experts failed to discuss their specific experiences with elder patients hold up, namely because the government's experts did not testify about specific experience with elder patients either. Again, the government wants to have it both ways. When defense experts testify based on their expert knowledge and experience, it is unreliable because they didn't cite a study or identify a particular patient. Yet when the government's experts testify based on their knowledge and experience, it is gospel, regardless of whether they discussed their own patients and even when they admit the weight of research is against them.

Accordingly, the government clearly failed to prove by clear and convincing evidence that Mr. Dear—a 65-year-old whose delusional disorder has gone untreated for up to 30 years—is substantially likely to be restored.

## Conclusion

At a minimum, this Court should vacate the *Sell* order and remand for further proceedings. It may also reverse the order altogether.

<div style="margin-left: 40%;">

Respectfully submitted,

Virginia L. Grady
Federal Public Defender


By:  */s/ Jacob Rasch-Chabot*
Jacob Rasch-Chabot
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
Email: Jacob_Rasch-Chabot@fd.org

</div>

## <u>Certificate of Compliance</u>

As required by Fed. R. App. P. 32(g)(1), I certify that this brief is proportionally spaced and contains 5,913 words.  I relied on my word processor to obtain the court, and the information is true and correct to the best of my knowledge.

*/s/ Jacob Rasch-Chabot*
Jacob Rasch-Chabot
Assistant Federal Public Defender